In re XONICS, INC., et al., Debtors.

ELSCINT, INC. and Elscint Imaging, Inc., Appellants,

v.

FIRST WISCONSIN FINANCIAL CORPORATION, Appellee.

No. 85 C 8959.

United States District Court, N.D. Illinois, E.D.

June 3, 1986.

Gary L. Prior, Jerome B. Meites, McDermott, Will & Emery, Chicago, Ill., for appellants.

John P. Messina, Pamela McLean Meyerson, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Chicago, Ill., for appellee.

## MEMORANDUM OPINION AND ORDER

McGARR, Chief Judge.

This cause is an appeal from a decision by The Honorable Thomas James, a bankruptcy judge for the Northern District of Illinois. On August 28, 1985, Judge James denied the motion of Elscint, Inc., and Elscint Imaging, Inc. (collectively, "Elscint") for distribution of escrowed funds. Judge James denied Elscint's motion on the ground that the bankruptcy court did not have jurisdiction over the dispute between Elscint and appellee First Wisconsin Financial Corporation ("FWFC") concerning the escrowed funds. Elscint appeals the ruling of Judge James. For the reasons expressed herein, Judge James's ruling is affirmed.

The bankruptcy proceedings out of which the appealed ruling came concerns the reorganization of debtors Xonics, Inc., Xonics Medical Systems, Inc., Xonics Imaging, Inc., Xonics Photochemical, Inc., Ekoline, Inc., Standard X–Ray Company, Medical Equipment Manufacturing Co., Inc., and Radiographic Development Corporation (collectively, the "Xonics Group"). Prior to the commencement of the Chapter 11 proceedings of the Xonics Group, Elscint, FWFC, and Xonics Medical Systems, Inc. ("XMS") entered into a complex financial transaction whereby Elscint acquired a substantial portion of the assets of XMS. FWFC was involved in the transaction because it was the principal institutional lender for the Xonics group.

Pursuant to the agreement, FWFC retained a security interest in the assets of XMS which were not transferred to Elscint. Included among the assets in which FWFC retained an interest were certain accounts receivable of XMS ("the retained receivables"). Other accounts receivable were transferred to Elscint under the agreement ("the transferred receivables").

On March 2, 1984, the bankruptcy court ordered that the checks which Elscint received representing proceeds from the retained receivables and the transferred receivables be delivered to the United States Trustee. The Trustee was ordered to deposit the checks into an account ("the Trustee account") and to hold them until further order of the court. By orders dated April 10, 1984, April 27, 1984, and September 20, 1984, the court provided for the manner in which disbursements would be made by the Trustee from the Trustee account and also approved certain disbursements from the Trustee account. All the funds in the Trustee account have been disbursed.

By order dated July 13, 1984, the bankruptcy court authorized the delivery of checks representing proceeds from the re-

tained receivables and the transferred receivables to Nachman, Munitz, & Sweig, Ltd. (Elscint's former attorneys in the bankruptcy proceedings) and Goldberg, Kohn, Bell, Black, Rosenblum & Moritz, Ltd. (attorneys for FWFC) as co-escrowees. The co-escrowees were authorized to deposit the checks into an account and to hold the proceeds until Xonics, Inc., XMS, Elscint, and FWFC reached agreement on the ownership of the proceeds and the manner in which they would be distributed.

On August 28, 1985, Elscint moved the bankruptcy court to order distribution to Elscint of certain proceeds in the escrow account which had been established pursuant to the order of July 13, 1984 at the American National Bank and Trust Company of Chicago ("the ANB account"). Elscint alleged that FWFC had taken distribution of its funds from the ANB account, but blocked distribution of the funds in the ANB account belonging to Elscint. Elscint also alleged that the funds in the ANB account belonged only to Elscint and FWFC. Elscint contended that FWFC had reached an agreement with Elscint regarding the ownership of the proceeds and the manner in which they would be distributed, but that FWFC now refused to abide by that agreement.

At the hearing on the motion on August 28, Judge James held that he did not have jurisdiction to resolve the dispute. After determining that the debtor had no interest in the proceeds in the ANB account, he found that the dispute did not concern a matter which had anything to do with the bankruptcy court. It is from this ruling which Elscint appeals.

Although FWFC raises other bases for this court to affirm the decision of Judge James, this court need not address them because it agrees with Judge James that the bankruptcy court was without jurisdiction to decide the motion of Elscint. A bankruptcy court has jurisdiction to hear, determine, and enter appropriate orders and judgments on cases under Title 11 and all core proceedings arising under Title 11 or arising in a case under Title 11. 28 U.S.C. § 157(b)(1). A bankruptcy court may also hear a proceeding that is not a core proceeding but that is otherwise related to a case under Title 11. 28 U.S.C. § 157(c)(1). However, the bankruptcy court cannot enter a final order or judgment on the related proceeding unless the parties to the proceeding consent. 28 U.S.C. § 157(c)(1), (2).

■ Section 157(b)(2) sets forth a nonexclusive list of the types of proceedings which are considered core proceedings. These types of proceedings are characterized by the fact that they spring from the operation and application of the Bankruptcy Code itself. *In re Alexander,* 49 B.R. 733, 736 (Bankr.D.N.D.1985). Core proceedings are proceedings which would have no existence outside of a bankruptcy proceeding. *Id.*

■ Elscint contends that its motion was a core proceeding because it concerned the liquidation of the assets of the estate under § 157(b)(2)(O). The flaw in that assertion, however, is that the proceeds of the ANB account were not part of the debtor's estate. The debtor has no interest in the account. The debtor is not involved in the resolution of this dispute. Rather, the dispute is between two creditors of the debtor over an asset in which the debtor has no interest.

The proceeds at issue are not even in the possession of the Trustee. Unlike the Trustee account which was administered by the Trustee pursuant to the court's orders regarding disbursement, the ANB account did not involve the Trustee and no court order was required for disbursements to be made. That the property at issue may at one time have been a part of the debtor's estate does not give the bankruptcy court, a court of extremely limited jurisdiction, the power to resolve disputes concerning the property after the debtor has disclaimed any interest in the property.

Elscint's argument that Judge James's ruling is contrary to judicial economy and Congress's intent to put all bankruptcy matters before the bankruptcy court misses the point: the determination of whether Elscint or FWFC is entitled to the funds in the ANB account is not a bankruptcy matter. Hence, it is not a matter to be resolved by the bankruptcy court.

■ Nor does Elscint's motion constitute a matter that is otherwise related to the bankruptcy proceeding. In order for a matter to be considered as related, it must be connected to the administration of the Title 11 case. *In re Systems Marketing Consolidated, Ltd.*, 19 B.R. 519, 521 (Bankr.N.D.Ill.1982). There must be some reason why adjudication of the claim is better placed with the bankruptcy court as opposed to a state court. *In re Alexander*, 49 B.R. at 737.

■ Elscint's motion is not connected to the administration of the Chapter 11 case concerning the Xonics Group. Reorganization can be accomplished without resolution of this dispute. The outcome of the dispute between Elscint and FWFC does not in any way affect the administration of the bankruptcy proceeding.

■ Moreover, even if this matter was considered to be related to the bankruptcy proceeding, the bankruptcy court cannot enter a final ruling on the matter in the absence of consent by all the concerned parties. Although Elscint argues that FWFC should be found to have consented to the jurisdiction of the bankruptcy court by its extensive involvement in the bankruptcy proceedings, this court finds no expression of consent by FWFC to the jurisdiction of the bankruptcy court to resolve this matter. Rather, the record reflects FWFC's consistent and strenuous objections to the bankruptcy court resolving the dispute between FWFC and Elscint.

For the foregoing reasons, the decision of the bankruptcy court is affirmed.