In re CENTRAL ICE CREAM COMPANY, Debtor.

Richard J. IZDEBSKI, Plaintiff,

v.

CENTRAL ICE CREAM COMPANY, a corporation, and Thomas Cummings, Defendants.

Thomas CUMMINGS, Third Party Plaintiff,

v.

Ben D. COTTEN, II, Cy Boroff, Jann, Carroll, Kruse and Sain Investment Partnership, Rico C. Paone and Frank Sense, Third Party Defendants.

No. 86 C 8988.
Bankruptcy No. 78 B 4820.
Adv. No. 86 A 0535.

United States District Court, N.D. Illinois, E.D.

Dec. 31, 1987.

Jerome Rotenberg, Norman L. Hafron, Rosenfeld, Rotenberg, Schwartzman, Hafron & Shapiro, Arnold A. Pagniucci, Nicholas Kitsos, Chicago, Ill., for plaintiff.

Schwartz, Cooper, Kolb & Gaynor, Karen Goodman, Norman A. Cohen, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

This matter is an appeal from a final order of dismissal entered by the Bankruptcy Court for the Northern District of Illinois. Jurisdiction is invoked under 28 U.S.C. sec. 158 (Supp. II 1984) and Rules 8001 and 8002 of the Federal Bankruptcy. Rules.

· The bankruptcy court dismissed both Thomas Cummings' amended third party complaint and Richard Izdebski's complaint for lack of subject matter jurisdiction.[1] Both adversary proceedings concern who holds title to the stock of the debtor, Central Ice Cream Company. The facts and procedural history of the case are fully set forth in the bankruptcy court's Memorandum Opinion and Order which is attached hereto as an Appendix. *Izdebski v. Central Ice Cream*, No. 86 A 0535, mem. op. (Bankr.N.D.Ill. Sept. 30, 1986) (hereinafter cited as "Mem. Op. *infra* at 939."). Both Izdebski and Cummings have appealed from the order of dismissal. As the sole issue on appeal is jurisdictional, we review the bankruptcy court's Order *de novo*.

For the reasons set forth below, we affirm the bankruptcy court's Order.

## THE CUMMINGS COMPLAINT

### *The Applicable Statute*

Cummings' first argument is that the bankruptcy court applied the wrong statute. The bankruptcy court applied the new jurisdictional provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Act"), 28 U.S.C. sections 151–158. Section 122 of the 1984 Act provides that, with certain exceptions, the Act will take effect on the date of enactment of the Act, July 10, 1984. Pub. L. No. 98–353, sec. 122 (1984). Specifically, the bankruptcy judge applied 28 U.S.C. sec. 157, which sets forth the jurisdiction of bankruptcy judges. Cummings contends that the summary and plenary jurisdictional provisions of the Bankruptcy Act of 1898 apply.[2] Cummings does not dispute that his adversary proceeding was pending on July 10, 1984.

Cummings' argument is unpersuasive. He has not cited to us a single decision supporting his position, and, in fact, every court that has considered the question has held that the new jurisdictional provisions

---

**1.** The bankruptcy court granted a motion to dismiss Cummings' third party complaint and *sua sponte* dismissed the Izdebski complaint.

**2.** The details of Cummings' argument are set forth in the bankruptcy court's opinion *infra* at 940, note 3.

apply to cases pending on July 10, 1984. (Cummings' only response to this array of authority is that those cases were wrongly decided.) In this district, Judge Hart in *In re UNR Industries, Inc.*, 45 B.R. 322 (N.D. Ill.1984) held that new section 157(b)(5), which addresses jurisdiction over personal injury and wrongful death claims, applies to cases pending when the 1984 Act became effective. *Id.* at 325. Other jurisdictions are in accord. *In re Castlerock Properties*, 781 F.2d 159, 160–61 (9th Cir. 1986); *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 659–60 (4th Cir.1985); *In re Amatex Corp.*, 755 F.2d 1034, 1036–37 (3d Cir.1985); *Carlton v. Baww, Inc.*, 751 F.2d 781, 787 n. 6 (5th Cir.1985); *In re Bell & Beckwith*, 50 B.R. 437, 438–39 (N.D. Ohio 1985). Although the Seventh Circuit has not expressly addressed the question, the Court in *In re Riggsby*, 745 F.2d 1153 (7th Cir.1984) applied without discussion 28 U.S.C. sec. 158, the new jurisdictional provision addressing appeals, to a case pending on the date of enactment of the 1984 Act.

We are persuaded that the new jurisdictional provisions apply to these proceedings. Section 122(a) provides: "Except as otherwise provided in this section, this title and the amendments made by this title shall take effect on the date of the enactment of this Act." Section 122(b) specifies certain provisions, not relevant to this proceeding, which do *not* apply to cases pending on the date of enactment. The obvious implication, as several courts have noted, is that the remainder of the 1984 Act does apply to cases pending on July 10, 1984. *E.g., In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir.1986).

In addition to the language of the effective date provision, the purpose of the Act strongly suggests that Congress intended the new jurisdictional provisions to apply to pending cases. The 1984 Act was enacted in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which held unconstitutional several aspects of bankruptcy courts' jurisdiction under the Bankruptcy Reform Act of 1978.[3] Thus it would be expected that the remedial legislation, particularly the jurisdictional provisions, would apply to pending cases, and we find that Congress clearly expressed this intent. For example, section 115 of the 1984 Act provides that jurisdiction over pending bankruptcy matters which, under the 1978 Act, was vested in bankruptcy courts, shall vest in the district courts on the effective date of the 1984 Act. Pub.L. No. 98–353, sec. 115(a)(1984). Similarly, section 122(b) specifies certain provisions that will not become effective on July 10, 1984, the implication being, as we have said, that all other provisions encompassed by section 122 apply to pending cases. Moreover, the legislative history of section 122, discussed in *In re Bell & Beckwith*, 50 B.R. 437 (N.D. Ohio 1985), supports this conclusion. *Id.* at 439 (citing H.R. 5174, 38 Cong.Rec. S8897 (daily ed. June 29, 1984)). Finally, the leading treatise on bankruptcy takes the same view. 1 Collier on Bankruptcy, par. 3.01[4] (15th ed. 1987) (but for those provisions specified in section 122(b), the new jurisdictional provisions became effective as of July 10, 1984, and apply to all cases then pending); *id.*, Special Supplement (1984) at 251 (the jurisdictional provisions of the Bankruptcy Reform Act of 1978 "are covered by other sections in the 1984 amendments and should, therefore, be considered repealed.")

■ Cummings' adversary proceeding was pending on the effective date of the

---

**3.** The Supreme Court in *Marathon* held that the broad grant of jurisdiction to the bankruptcy courts, which allowed those courts to decide a state law contract claim over the objection of one of the parties, violated Article III of the United States Constitution. 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (plurality opinion); *id.* at 91–92, 102 S.Ct. at 2881–82 (Rehnquist, J., concurring). As explained by the Court in *In re Castlerock Properties*, 781 F.2d 159, 160 n. 1 (9th Cir.1986), the plurality in *Marathon* noted a number of problems with the bankruptcy courts established by the 1978 Act, including their broad subject matter jurisdiction, their exercise of all jurisdiction and all ordinary powers of district courts, review of their decisions under the clearly erroneous standard, and the fact that they could enter final judgments on state law claims. *Marathon*, 458 U.S. at 84–86, 102 S.Ct. at 2878–79.

1984 Act. Absent manifest injustice or congressional intent to the contrary, a court is to apply the law as it exists at the time the decision is rendered. *Bradley v. School Bd. of City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). This principle applies to changes affecting jurisdiction as well as to changes in the substantive law. *See Andrews v. Charleston Stone Products Co.,* 436 U.S. 604, 608 n. 6, 98 S.Ct. 2002, 2005 n. 6, 56 L.Ed.2d 570 (1978); *Bruner v. United States,* 343 U.S. 112, 116–17, 72 S.Ct. 581, 584, 96 L.Ed. 786 (1952). As we have discussed, Congress has affirmatively shown its intent that the jurisdictional provisions be applied to pending cases. Moreover, we discern no injustice in applying the new provisions. Although we find that under the 1984 Act these proceedings must be dismissed for lack of subject matter jurisdiction, appellees may pursue their remedies in state court.

### Jurisdiction Under the 1984 Act

As the bankruptcy court explained in its opinion:

> Under sec. 115 of the 1984 Act, on July 10, 1984, all cases pending under the Bankruptcy Act were transferred to the Federal District Courts which have original jurisdiction over bankruptcy matters pursuant to 28 U.S.C. sec. 1334. Bankruptcy matters are referred to the Bankruptcy Court pursuant to 28 U.S.C. sec. 157. Under sec. 157, a bankruptcy judge may enter a final order in a "core proceeding," but must submit proposed findings of fact and conclusions of law to the district court for consideration and entry of a final order when the matter is a "related proceeding."

Mem.Op. *infra* at 941. Cummings argues that the bankruptcy court has either core or "related to" jurisdiction over this adversary proceeding.

■ It is apparent that the core and noncore concepts embodied in the 1984 Act envision that noncore related proceedings are to some extent removed from core proceedings, the latter being the heart of a bankruptcy matter. The terms themselves, as well as the fact that bankruptcy judges may enter final orders only in core proceedings, make this self-evident. *See also* R. Ginsberg, Bankruptcy (P–H) par. 1122, 1123 (1985) (core proceedings are essentially those that are central to the bankruptcy case itself, most of which involve questions arising under federal bankruptcy law; noncore proceeding is one that is not a core proceeding but is otherwise related to a case under the Bankruptcy Code). Accordingly, a proceeding that is not a related proceeding *a fortiori* cannot be a core proceeding. Because we find that under Seventh Circuit case law this proceeding is not a related proceeding, we find it unnecessary to address whether it is a core proceeding.[4]

Cummings concedes that the disputed shares of stock are not property of the estate. In several recent decisions, the Seventh Circuit has considered and rejected, in a variety of contexts, claims that bankruptcy jurisdiction exists over disputes involving property not belonging to the estate. *In re Xonics, Inc.,* 813 F.2d 127 (7th Cir.1987); *In re Kubly,* 818 F.2d 643 (7th Cir.1987); *In re Kilgus,* 811 F.2d 1112 (7th Cir.1987); *In re Chicago, Rock Island and Pacific R.R.,* 794 F.2d 1182 (7th Cir.1986) ("*Sanborn II* "). *See also In re Burton Coal Co.,* 126 F.2d 447 (7th Cir.1942).

In *Xonics,* the Seventh Circuit defined a dispute that is "related to" the bankruptcy to mean a dispute that "affects the amount of property available for distribution or the allocation of property among creditors." 813 F.2d at 131. The Court illustrated this definition with the following example.

> Suppose A, B and C claim interests in a pool of oil. If A is a bankrupt, the bankruptcy court could determine the interests of all three in the property under 28 U.S.C. sec. 157(b)(2) or sec. 157(c)(1), because only after identifying the "property" of the estate may the court apportion that property among creditors. But if the estate should disclaim any interest

---

**4.** Although we find it unnecessary to address the question, we fully agree with the reasons given by the bankruptcy court for its determination that this is a noncore proceeding.

in the pool, only the dispute between B and C would remain. The resolution of that dispute would not affect the creditors of the bankrupt, and there would be no source of jurisdiction. That B and C might also be creditors of the bankrupt would not enlarge the court's power; there is no jurisdiction to resolve all disputes among creditors of a bankrupt. *Id.*

A few months later, the Seventh Circuit reiterated that disputes among creditors of a bankrupt are within the federal bankruptcy jurisdiction only if they involve property of the estate or if resolving the dispute will affect the recovery of some other creditor. *Kubly*, 818 F.2d at 645 (citing *Xonics*). *Xonics* makes clear that this principle is not limited to creditors; arguably the principle applies with even greater force to disputes between noncreditor third parties such as Cummings and the third party defendants.

■ Cummings concedes that the stock is not property of the estate. The estate has claimed no interest in the stock. Cummings does not maintain, nor could he, that resolution of the dispute will affect the recovery of creditors. Accordingly, federal bankruptcy jurisdiction does not exist over these disputes.

We note that Cummings correctly states that the facts of this case are unusual. In the typical bankruptcy, particularly a liquidation, the estate will not have even sufficient funds to pay creditors in full, much less end up with a surplus. In this case, because of a settlement between McDonald Corporation and the debtor, there will be a surplus of at least $1,000,000 for the debtor corporation after all creditors are paid. See Mem.Op. *infra* at 940 n. 1. Cummings urges us to find that "[a]ll the usual rules and principles are not applicable" because of the unique facts of this case. He asserts that unless the bankruptcy court is allowed to determine who owns the stock, there will be confusion in the bankruptcy proceedings

over who may speak for the debtor corporation. In essence, Cummings, as well as Izdebski, maintains that it makes more sense to allow the bankruptcy court to resolve the stock ownership question along with the bankruptcy matters, rather than compelling the parties to litigate these matters in separate forums.

Even if the foregoing is true, this does not mean that we may therefore declare that jurisdiction exists. The Seventh Circuit has addressed this type of argument. In *Sanborn II*, the Court rejected the notion that courts may exercise jurisdiction when there is a utilitarian reason for them to do so. 794 F.2d at 1188. Similarly, the Court has observed that a court may not assume jurisdiction because the judge (or a party) believes it is wise to resolve the dispute. *Kubly*, 818 F.2d at 645. This is so, of course, because federal courts are courts of limited jurisdiction, whose power must be conferred, not assumed. *Id.* This Court may not disregard the applicable statute or controlling case law merely because the facts of the case before it are unusual. Similarly, we may not exercise jurisdiction simply because it might be more convenient for the bankruptcy court to determine this dispute along with the bankruptcy proceeding.

Finally, both Cummings and Izdebski argue that the appellees have impliedly consented to the bankruptcy court's jurisdiction, and therefore under 28 U.S.C. sec. 157(c)(2), the bankruptcy court may adjudicate these matters. Section 157(c)(2) provides that the district court, with the consent of all parties, may refer a proceeding *related to* a case under title 11 to a bankruptcy judge. Since we have determined that neither of these adversary proceedings are related proceedings, section 157(c)(2) is inapplicable.[5]

## THE IZDEBSKI COMPLAINT

Izdebski also claims to be the owner of some of the debtor's stock. While Cum-

---

**5.** Moreover, it is doubtful that the third party defendants named in Cummings' proceeding could be deemed to have impliedly consented. *See Xonics*, 813 F.2d at 132 (participation in a

reorganization is not itself consent to adjudication of a "related" dispute, at least not when participating party vocally objects.)

mings' complaint is against various third parties, Izdebski's complaint is against the debtor corporation (and Cummings), which Izdebski asserts is a crucial difference between the two adversary proceedings. The complaint alleges that Izdebski entered into an agreement with the debtor corporation under which Izdebski would perform certain services for the corporation in exchange for 1,900 shares of stock. It also alleges, on information and belief, that the debtor has disposed of the shares that belong to Izdebski in violation of the parties' agreement. It seeks a declaration that Izdebski is the owner of 40% of the shares of common stock, an Order directing the debtor to issue the shares, and an accounting of the disposition of all shares of the debtor's stock.

We conclude that federal jurisdiction over the Izdebski claim is lacking for much the same reasons we have given for dismissal of Cummings' claim. We briefly address the arguments presented by Izdebski that differ from those of Cummings.

Izdebski's principal argument is that because his claim is against the debtor, it will affect the administration of the estate and therefore is either a core or related proceeding. Izdebski appears to think that federal jurisdiction is mechanically determined by identifying the parties to the dispute.[6] This is not so. Federal jurisdiction "depends upon 'the character of the claims asserted and the relationship of those claims to the bankruptcy proceeding, rather than ... the status of the parties as debtors or creditors.'" *In re Bobroff,* 43 B.R. 746, 751 (E.D.Pa.1984) (quoting *In re Romeo J. Roy, Inc.,* 32 B.R. 1008, 1010 (D.Me.1983), *vacated as moot and remanded,* 740 F.2d 111 (1st Cir.1984)), *aff'd,* 766 F.2d 797 (3d Cir.1985).

The resolution of this dispute will have no effect on the estate. It will not affect the amount of property available for distri-

bution or the allocation of property among creditors. *See Xonics,* 813 F.2d at 131. Interestingly, Izdebski took precisely this position in opposing an earlier motion to dismiss. In that motion, the debtor asserted that Izdebski's claim must be dismissed for failure to comply with the requirement that creditors must file their proofs of claim before confirmation of the debtor's plan. Izdebski successfully argued that he was not a creditor, thus the requirement did not apply to his claim. He stated: "The relief sought by the plaintiff in this case will not affect the rights or claims of creditors that may have already been approved by this court. His complaint seeks to establish ownership rights to property, if any, remaining in the hands of the debtor only after the claims of all creditors and the expenses arising out of the administration of the debtor's estate have been paid." Response to Motion to Dismiss of Central Ice Cream Company at 4–5.

In this appeal, Izdebski does not expressly disclaim his previous position, though he does argue that his complaint concerns the administration of the estate (sec. 157(b)(2)(A)) and that it is a claim against the debtor's estate (sec. 157(b)(2)(B)) and therefore is a core proceeding. It is self-evident that section 157(b)(2)(B) speaks to claims of *creditors* against the estate. Izdebski maintains that he is a stockholder of the debtor corporation. He does not now argue that he is a creditor, nor could he, given controlling Illinois law which holds that a corporation's stockholders are not creditors of the corporation. *E.g., Chicago Title and Trust Co. v. Central Trust Co.,* 312 Ill. 396, 144 N.E. 165, 173 (1924), *cited in Izdebski v. Central Ice Cream Co.,* No. 78 B 4820, slip op. at 2–3 (Bankr.N.D.Ill. July 29, 1985) (order denying motion to dismiss).[7]

In sum, the mere presence of the debtor in this adversary proceeding does not con-

---

**6.** To the extent *In re Systems Marketing Consolidation Ltd.,* 19 B.R. 519 (N.D.Ill.1982) supports this view, we point out that that case was decided prior to *Marathon* and the 1984 Act.

**7.** Izdebski also argues that if, as he believes, the debtor has disposed of the shares Izdebski is

entitled to, he will be able to recover money damages, and therefore, the proceeding affects the property of the estate. This speculative argument is an insufficient basis on which to find subject matter jurisdiction.

fer federal bankruptcy jurisdiction. Resolution of the dispute in Izdebski's favor will have no effect on the bankrupt estate, and is governed wholly by state contract law. *See In re Bobroff,* 43 B.R. 746, 749, 781 (E.D.Pa.1984). Federal courts have no jurisdiction over this action.

## CONCLUSION

We conclude that the Court lacks subject matter jurisdiction over these proceedings. Accordingly, the bankruptcy court's Order dismissing both the Izdebski complaint and the Cummings' Amended Third Party Complaint is AFFIRMED.

## APPENDIX

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion of Third Party Defendants, Rico G. Paone and Jann, Carroll, Kruse and Sain Investment Partnership to Dismiss the Amended Third Party Complaint herein on grounds that the Court lacks subject matter jurisdiction. For reasons stated below, that motion is allowed and the Amended Third Party Complaint is dismissed. The Court *sua sponte* dismisses the Izdebski Complaint for the same reasons.

## BACKGROUND

The plaintiff Richard J. Izdebski, filed a Complaint against the debtor corporation and its president alleging that he had an agreement with the debtor, Central Ice Cream Co., under which the debtor would transfer 1,900 shares of its stock in return for the plaintiff's obtaining certain financial benefits for the debtor corporation. Izdebski alleges that he fully performed under the agreement, but that the debtor corporation, through Cummings, its president, has failed to transfer the stock. The plaintiff seeks an order that the stock be issued to him and that an accounting be made of the issuance and disposition of all shares of the debtor corporation's common stock from December 10, 1977 to the present. The plaintiff joined Thomas Cummings, president of the debtor corporation

as a necessary party to ensure that a just determination of all issues in the adversary could be made.

The defendant Cummings, filed a Third Party Complaint naming Ben D. Cotten, II, Cy Boroff, Rico G. Paone, Frank Senese and Jann, Carroll, Kruse and Sain Investment Partnership as Third Party Defendants. Cummings has joined these Third Party Defendants because they are necessary parties to determine all of the issues and interests raised herein. These issues are whether: (1) the claim of plaintiff Richard Izdebski is prior in time to the claims of Cotten and the Paone Group; (2) the claim of plaintiff Izdebski purports to prohibit any sales or other disposition of the stock of Central Ice Cream; (3) judgment in favor of plaintiff Izdebski would be an adjudication of the alleged claims and interests of Cotten and the "Paone Group;" (4) Cotten has filed a Proof of Interest and Recording Status, in which Cotton claims ownership of 100% of the stock of Central Ice Cream.

In Count I of the Third Party Complaint, Cummings seeks a determination that Cotten has no interest in the stock of the debtor corporation because Cotten did not perform any of the terms of the Memorandum of Understanding. The Memorandum was executed on May 18, 1978 and provided that Cotten would pay $1,200,000 for all the common stock of the debtor corporation.

In Count II of the Third Party Complaint, Cummings alleges that a Purchase Agreement was entered into with the "Paone Group" in October, 1978 but that the "Paone Group" failed to perform any of the terms and conditions of the Purchase Agreement. Cummings seeks a judgment against the "Paone Group" that they have no right, title, interest or claim of any kind to the 2,850 shares of common stock of the debtor corporation.

The Third Party Complaint did not have a Count III; however, in Count IV of the Amended Third Party Complaint, Cummings seeks to have the transactions with George Rafel and George Kamberos rescinded. Cummings had entered into a Hy-

pothecation Agreement with Rafel in exchange for Rafel providing loans to a subsidiary of Central Ice Cream Company to finance litigation against McDonalds. Cummings filed a Complaint for Declaratory and Injunctive Relief in this Court, No. 86 A 536, to stop a foreclosure sale of the stock hypothecated to Rafel. The Court has separately ruled this date that it does not have subject matter jurisdiction over that adversary proceeding and has dismissed it.

The Third Party Defendants have moved to Dismiss the Amended Third Party Complaint for Want of Jurisdiction or, in the alternative, for the Court to Abstain from hearing such Complaint. The stockholder dispute has become extremely important to the parties. In a suit by the debtor against McDonalds Corporation, a settlement was reached which will provide sufficient funds to pay all creditors of the estate and all administrative expenses. The debtor corporation will then likely receive the rest of the settlement and thus the stock will likely have value.[1]

1. Following entry of a $52,000,000 judgment in that very complex and difficult litigation, a settlement thereof was presented to and approved by the Court in the amount of $14,500,000. That Order is presently on appeal. If affirmed, the settlement sum with interest will be sufficient to pay all creditors with interest (if that is ordered) and all administrative expenses, and still leave at least $1,000,000 for the debtor corporation. *In re Central Ice Cream*, 59 B.R. 476, 485 at n. 4 (1986).

2. On May 16, 1986, the Court ordered that the adversary be refiled in accordance with the current procedure. The case was refiled on May 22, 1986 and thus bears a 1986 case number.

3. Cummings asserts that § 403(a) of the Bankruptcy Reform Act of 1978, Public Law 95–598, was not repealed by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Public Law 98–353. Section 403(a) provides:

SEC. 403(a) A case commenced under the Bankruptcy Act, and all matters and proceedings in or related to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.

## DISCUSSION OF JURISDICTION ISSUES

This adversary proceeding was filed on July 3, 1984.[2] On July 10, 1984, The Bankruptcy Amendments and Federal Judgeship Act of 1984 was enacted. Cummings in opposing the Motion to Dismiss, has argued that rather than the new jurisdictional provisions of the 1984 Act, the summary and plenary jurisdiction provisions of the Bankruptcy Act apply to this adversary proceeding.[3] However, "absent manifest injustice or congressional intent to the contrary, we generally apply the law as it exists at the time the decision is rendered." *In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir.1986). Although the 1984 Act specified that parts of it did not apply to cases pending at the time, the remainder of the 1984 Act, by implication, applies to cases pending on July 10, 1984. *Id.* Thus, the Bankruptcy Amendments and Federal Judgeship Act of 1984 with its attendant core and noncore jurisdiction is applicable to this case. *Id. E.g., In re Amatex Corp.*, 755 F.2d 1034, 1037 (3rd Cir.1985);

Thus, Cummings argues that the Bankruptcy Act and not the Bankruptcy Reform Act would apply to the Central Ice Cream Bankruptcy because the bankruptcy, which was filed on June 26, 1978, was pending when the Bankruptcy Reform Act of 1978 became effective. Section 122 of the 1984 Act provides:

SEC. 122(a) Except as otherwise provided in this section, this title and the amendments made by this title shall take effect on the date of the enactment of this Act.

(b) Section 1334(c)(2) of title 28, United States Code, and section 1411(a) of title 28, United States Code, as added by this Act, shall not apply with respect to cases under title 11 of the United States Code that are pending on the date of enactment of this Act, or to proceedings arising in or related to such cases.

(c) Sections 108(b), 113, and 121(e) shall take effect on June 27, 1984.

Cummings argues that § 122(a) applies only to amendments made by the 1984 Act. Since § 403(a) of the Bankruptcy Reform Act of 1978 was not repealed or amended, he asserts that § 122(a) cannot supersede the plain language of § 403(a). The 1984 Act, however, created a new chapter, Chapter 6, in title 28 of the United States Code. That chapter sets forth the jurisdiction of the Bankruptcy Judges and became effective on July 10, 1984.

*Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 659–60 (4th Cir.1985).

Under § 115 of the 1984 Act, on July 10, 1984, all cases pending under the Bankruptcy Act were transferred to the Federal District Courts which have original jurisdiction over bankruptcy matters pursuant to 28 U.S.C. § 1334. Bankruptcy matters are referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157. Under § 157, a bankruptcy judge may enter a final order in a "core proceeding," but must submit proposed findings of fact and conclusions of law to the district court for consideration and entry of a final order when the matter is a "related proceeding."

Although the definition of a "core proceeding" is extremely important, it has not been defined in the statute and the examples given in § 157(b) are not exclusive. Nevertheless, "the 'essence of the jurisdiction system' is the distinction between core and noncore matters." *In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir.1986) (citing *In re Lion Capital Group*, 46 B.R. 850, 852 (Bankr.S.D.N.Y.1985)). According to case law, "core proceedings are defined as those which have no existence outside a bankruptcy proceeding." *In re Xonics Inc.*, 61 B.R. 818, 819 (N.D.Ill.1986). Further, claims which have a life independent of federal bankruptcy law, but which have arisen in a bankruptcy case have been defined as "related matters." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1208 (7th Cir.1984), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984). The two catchall provisions set forth in § 157(b) apply to "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship...." § 157(b)(2)(A) and (O). A determination that a proceeding is a core proceeding should be made "within the guidelines set forth by the Supreme Court, since the purpose of the [1984] amendments was to rectify the unconstitutional jurisdiction found in *Marathon*." *In re Illinois–California Express, Inc.*, 50 B.R. 232, 236 (Bankr.D.Colo.1985).

The Third Party Complaint here is not a proceeding which corresponds to the actions specified in § 157(b)(2)(B)–(N), nor is it a "matter concerning the administration of the estate." Although the catchall provision of § 157(b)(2)(O) specifies that a proceeding affecting the "adjustment of ... the equity security holder relationship" is a core proceeding, that section would more properly be interpreted as applying only to reorganization proceedings in which, for example, stock is issued in exchange for debt or stock is cancelled. Further, the court "should avoid characterizing a proceeding as core if to do so would raise constitutional problems.... The broad reading that can be given to § 157(b)(2) should be tempered by the *Marathon* decision...." *In re Castlerock Properties*, 781 F.2d 159, 169 (9th Cir.1986).

The Third Party Complaint involves a dispute over stock ownership on various purchase agreements. These state law contract claims are exactly the type of claim that the United States Supreme Court ruled could not constitutionally be subject to the Bankruptcy Judges' jurisdiction in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The Court's ruling in *Marathon* "establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without the consent of the litigants...." *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 105 S.Ct. 3325, 3334–35, 87 L.Ed.2d 409 (1985). Therefore, this Court holds that the Third Party Complaint does not involve a "core proceeding" in which the Court would have jurisdiction to enter a final order.

However, the determination that the proceeding is noncore does not prevent the Bankruptcy Court from hearing the proceeding if it is "related" to the bankruptcy case. A related proceeding is one "that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court." *In re K & L, Ltd.*, 741 F.2d 1023, 1029 (7th Cir.1984). The pri-

mary issue is whether the action involves a body of law other than bankruptcy law, and includes actions by the estate against creditors as well as noncreditors. *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1209–10 (7th Cir.1984), 469 U.S. 982, *cert. denied,* 105 S.Ct. 386, 83 L.Ed.2d 321 (1984).

In order for the Bankruptcy Court to have subject matter jurisdiction over a "related" proceeding, there must be a nexus between the proceeding and the Title 11 case. *In re Pacor, Inc.,* 743 F.2d 984, 994 (3rd Cir.1984). The test for determining "relatedness" is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 994 (citations omitted). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* at 994.

The Seventh Circuit has long held that stock of the corporation is not property of the debtor and that the Bankruptcy Court does not have jurisdiction over disputes between third parties regarding stock or other property in which the estate has no interest. *In re Burton Coal Co.,* 126 F.2d 447, 448 (7th Cir.1942). A narrow exception exists when it is impossible to administer the estate or reorganize the debtor absent a determination of the controversy by the Bankruptcy Court. *Id.* at 448. That exception is not present in this case.

The entire adversary proceeding involves a dispute between third parties to the bankruptcy proceeding. This stock ownership dispute is in connection with various agreements relating to property in which the estate has no interest. This is neither a "core proceeding" nor is there a sufficient nexus to the bankruptcy case to satisfy the requirements for a "related" proceeding. Resolution of the controversy in favor of any party will have no effect upon the administration of the bankruptcy estate. Further, the bankruptcy case is currently a liquidation proceeding and without a reorganization of the debtor, a determination of this controversy by the Bankruptcy Court is not necessary. Accordingly, this Court concludes that it has neither core nor related jurisdiction over this adversary proceeding.

The Motion to Dismiss is directed to the Amended Third Party Complaint. The Court has determined it does not have subject matter jurisdiction over that part of the adversary proceeding. The Complaint filed by Izdebski also involves a state law contract issue. The determination of the title to 1,900 shares of common stock over which Izdebski claims ownership will have no impact on the administration of this Chapter 7 liquidation. This Court earlier denied motions to dismiss the Izdebski Complaint based on nonjurisdiction grounds (Memorandum Opinion July 29, 1985). Defendants thereto have not contested jurisdiction over that Complaint, and in view of their position on that subject with respect to the Third Party Complaint are of course not likely to do so. This Court "is obligated to raise the jurisdictional issue *sua sponte* where it appears with certainty that the dispute will have no impact on the administration" of the bankruptcy estate. *In re Denalco,* 57 B.R. 392, 395 (N.D.Ill.1986). That is the case here. To the extent Izdebski seeks to have the Company issue stock to him in return for an alleged service, this Complaint only facially involves those two parties. It is clear from Third Party Pleadings that many claims of those parties are inter-related and that the issues and claims in no way impact on this bankruptcy. Therefore, for the reasons set forth herein, the Izdebski Complaint must also be dismissed. Once the McDonald's litigation is disposed of (fn. 1 *supra*) and this bankruptcy is closed, nothing in this Order will prevent joinder of the corporation in the litigation between individuals that will now likely proceed in state court.

IT IS HEREBY ORDERED that both the Complaint and Amended Third Party Complaint are dismissed. The Clerk is directed to docket this final order forthwith.

Dated: September 30, 1986.

/s/ Jack B. Schmetterer
United States Bankruptcy Judge